IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs May 2, 2018

**STATE OF TENNESSEE v. MICHAEL ANTHONY RODGERS**

**Appeal from the Circuit Court for Madison County**
**No. 15-441    Kyle Atkins, Judge**

_____

**No. W2017-01254-CCA-R3-CD**

_____

The Defendant, Michael Anthony Rodgers, was convicted by a Madison County Criminal Court jury of possession of heroin with the intent to deliver, a Class B felony; possession of methamphetamine with intent to deliver, a Class C felony; and simple possession of methamphetamine and heroin, both Class A misdemeanors, and was sentenced by the trial court as a Range IV, persistent offender to an effective term of twenty-two years at 45% in the Department of Correction, to be served consecutively to his sentence in a federal case. On appeal, he challenges the sufficiency of the evidence in support of his felony drug convictions, arguing that there was insufficient proof from which the jury could infer that he possessed the drugs with the intent to deliver. Following our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which TIMOTHY L. EASTER and J. ROSS DYER, JJ., joined.

Joshua B. Dougan, Jackson, Tennessee, for the appellant, Michael Anthony Rodgers.

Herbert H. Slatery III, Attorney General and Reporter; Andrew C. Coulam, Assistant Attorney General; Jody S. Pickens, District Attorney General; and Nina W. Seiler, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

This case arises out of a narcotics officer's April 19, 2014, traffic stop of a vehicle in Jackson that resulted in the seizure of 9.7 grams of methamphetamine, .08 grams of

heroin, and $819 in cash from the person of the Defendant, the passenger in the vehicle, and a methamphetamine pipe from underneath the driver's seat. The Defendant and the driver of the vehicle, Brandi Eatman, were charged together in a five count indictment with possession of methamphetamine with the intent to sell and deliver, possession of heroin with the intent to sell and deliver, and possession of drug paraphernalia. On July 15, 2016, the State dismissed the drug paraphernalia charge against the Defendant, leaving him to proceed to trial alone on the remaining four counts of the indictment.

The essential facts surrounding the traffic stop and the seizure of the drugs from the Defendant's person are not in dispute. On April 19, 2014, Investigator Andy Smith of the Madison County Sheriff's Department, who at that time was assigned to the Metro Narcotics Unit, was patrolling in an area of downtown Jackson when he spotted the unbuckled Defendant in the passenger seat of a four door sedan and initiated a traffic stop of the vehicle. At trial, Investigator Smith described seeing a small plastic bag in the Defendant's hand after the Defendant exited the vehicle and how the Defendant ran his left hand down the back of his overalls in a furtive movement. He further described feeling a lump in the Defendant's rear crotch area as he patted him down and how a fellow narcotics officer uncovered, hidden in the Defendant's buttocks, a plastic bag that contained two smaller bags that held methamphetamine and heroin, respectively. In addition to the drugs, Investigator Smith and his fellow officer also found $819 in cash on the Defendant's person.

Investigator Smith testified that during his six years with the Metro Narcotics Unit he had extensive experience with controlled drug buys and methamphetamine and heroin-related arrests. In his experience, the typical purchase of methamphetamine for personal use is "generally anywhere from . . . half a gram up to maybe two grams." The typical purchase of heroin for personal use is one to three "buttons," with a button consisting of a tenth of a gram. He said that methamphetamine sold for personal use is usually packaged in small "plastic baggy corners," while heroin sold for personal use is packaged in small pieces of aluminum foil that are "folded really neat" and "tight." According to his testimony, a half gram of methamphetamine would sell for approximately $50 on the street and a button of heroin for $20 to $40.

On cross-examination, Investigator Smith acknowledged that methamphetamine users are "notorious . . . for staying up for days and days" and that a methamphetamine user will "use all the methamphetamine he has[.]" He further acknowledged that Ms. Eatman had been arrested a few times and that a methamphetamine pipe, which was found in the vehicle, was an item associated with the ingestion of drugs. Finally, he conceded that the Defendant had not been the target of any drug investigations.

- 2 -

Additional witnesses presented by the State were: the narcotics officer who provided backup for the traffic stop, Investigator Scott Corneliusson of the Madison County Sheriff's Department's Metro Narcotics Unit, who corroborated Investigator Smith's testimony about the typical amount of drugs purchased for individual use; evidence technicians for the Metro Narcotics Unit and the Tennessee Bureau of Investigation, who described the chain of custody of the evidence; and a forensic chemist with the Drug Enforcement Administration, who analyzed the evidence submitted in the case and determined it to consist of 9.7 grams of methamphetamine and .08 grams of heroin hydrochloride.

The Defendant testified that he was a drug addict with a thirty-plus year history of anxiety, depression, and illegal drug use. He said he initially used cocaine but switched to methamphetamine because it was cheaper and "it last[ed] longer." At the time of his arrest in the instant case, he was living in a drug rehabilitation center in Memphis and had been working for approximately six months at Diamond Distributors in Olive Branch, Mississippi. The Defendant indicated that he had been sober for a period of time but that he experienced a relapse after receiving his income tax refund, which accounted for the $819 in cash in his pocket and the methamphetamine and heroin found on his person. He explained that he had used the tax refund, along with some of his job earnings, to purchase 3 grams of heroin and 12 grams of methamphetamine and that he and Ms. Eatman had been using those drugs prior to his arrest in the instant case. He said he and Ms. Eatman had been on their way to party with some friends and that the drugs he purchased would have lasted him approximately four or five days. The Defendant denied that he had any intention of selling the drugs.

On cross-examination, the Defendant testified that he had rented a room at a motel in Jackson, where he shared the drugs he had purchased with four other individuals who were partying in the motel room with him: Ms. Eatman, "Scarlett," "Frank," and "Richard." He said he earned approximately $9.50 per hour at his forty-hour per week job, which he had held for approximately five and a half months. He stated he had spent approximately $1175 on the drugs he purchased and claimed that those funds, as well as the $819 he had remaining, came from his income tax refund and his most recent weekly paycheck. Finally, he acknowledged that he had two prior convictions for criminal impersonation.

Following deliberations, the jury convicted the Defendant of possession of heroin and possession of methamphetamine with the intent to deliver, as charged in counts two and four of the indictment, and of the lesser offenses of simple possession of heroin and methamphetamine in counts one and three of the indictment, which were merged with counts two and four.

## ANALYSIS

The sole issue the Defendant raises on appeal is whether the evidence is sufficient to sustain his felony drug convictions. Specifically, he argues that there was insufficient evidence to show that he intended to deliver the drugs he possessed to any other person. In support, he cites his own testimony about his drug addiction and intention to consume the drugs himself, the fact that no other evidence associated with selling drugs, such as digital scales, was discovered on his person or in the vehicle, and Investigator Smith's concession that the amount of heroin and methamphetamine in the Defendant's possession could have been intended for personal use. The State responds by arguing that the jury rationally concluded that the Defendant possessed the heroin and methamphetamine with the intent of distributing them rather than for the Defendant's personal use. We agree with the State.

In considering this issue, we apply the rule that where sufficiency of the convicting evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-91 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). The same standard applies whether the finding of guilt is predicated upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

A criminal offense may be established entirely by circumstantial evidence. State v. Majors, 318 S.W.3d 850, 857 (Tenn. 2010). It is for the jury to determine the weight to be given the circumstantial evidence and the extent to which the circumstances are consistent with the guilt of the defendant and inconsistent with his innocence. State v. James, 315 S.W.3d 440, 456 (Tenn. 2010). In addition, the State does not have the duty to exclude every other reasonable hypothesis except that of the defendant's guilt in order to obtain a conviction based solely on circumstantial evidence. See State v. Dorantes, 331 S.W.3d 370, 380-81 (Tenn. 2011) (adopting the federal standard of review for cases in which the evidence is entirely circumstantial).

All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury,

approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 219 Tenn. 4, 405 S.W.2d 768, 771 (Tenn. 1966) (citing Carroll v. State, 212 Tenn. 464, 370 S.W.2d 523 (1963)).

Further, "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

To sustain the convictions, the State had to prove beyond a reasonable doubt that the Defendant knowingly possessed the heroin and cocaine, both controlled substances, with the intent to deliver them. See Tenn. Code Ann. § 39-17-417(a)(4). "It may be inferred from the amount of a controlled substance or substances possessed by an offender, along with other relevant facts surrounding the arrest, that the controlled substance or substances were possessed with the purpose of selling or otherwise dispensing." Tenn. Code Ann. § 39-17-419.

We conclude that the evidence, when viewed in the light most favorable to the State, was more than sufficient to sustain the Defendant's convictions for possession of heroin and possession of methamphetamine with the intent to deliver. Although the Defendant claimed that the drugs were only for his personal use, the jury obviously disbelieved him and instead accredited the testimony of the experienced drug enforcement officers about the typical amount of drugs purchased by the average user. This was its prerogative as the trier of fact. Accordingly, we affirm the judgments of the trial court.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgments of the trial court.

_____
ALAN E. GLENN, JUDGE